UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 1:22-cr-000340(TSC) |
| v. : | |
| : | |
| DEREK SULENTA, : | |
| : | |
| Defendant : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Derek Sulenta to 21 days' incarceration, 3 years of probation, 60 hours of community service, and $500 in restitution.

**I.    Introduction**

Defendant Derek Sulenta, a 37-year-old manager of a mattress company, participated in the January 6, 2021, attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.8 million dollars in losses.[1]

Defendant Sulenta pleaded guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G). As explained herein, a sentence of  21 days' incarceration, 3 years of probation, and 60 hours of

---

[1] Although the Statement of Offense in this matter, filed on November 8, 2022, (ECF No. 15 at ¶ 6) reflects a sum of more than $1.4 million dollars for repairs, as of October 17, 2022, the approximate losses suffered as a result of the siege at the United States Capitol was $2,881,360.20. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police.

community service is appropriate in this case because Sulenta: (1) spent 47 minutes inside the Capitol Building during the breach of it; (2) entered a Senate Conference Room that is typically not open to the public even when the Capitol is not locked down as it was on January 6; and (3) bragged on social medial afterwards that "we breached the capital (sic) building"; and (4) has yet to sincerely express genuine remorse for this criminal conduct on January 6.

The Court must also consider that Sulenta's conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who trying to prevent a breach of the Capitol Building, and disrupt the proceedings. Here, the facts of and circumstances of Sulenta's crime support a sentence of 21 days' incarceration, 3 years of probation, 60 hours of community service, and $500 in restitution in this case.

## II.     Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. See ECF 15 (Statement of Offense), at 1-7.

*Defendant Sulenta's Role in the January 6, 2021 Attack on the Capitol*

On December 23, 2020, Sulenta posted on his Facebook Account that "I'll be there Jan 6th to support the president no matter what happens" and "That's the day he called for patriots to show up." Sulenta flew from Los Angeles, California to Washington D.C on January 5, 2021. That day, Sulenta's Facebook Account indicated he left from Los Angeles International Airport with the caption "we out." That evening, Sulenta's Facebook Account indicated his location in Washington, D.C. with the caption "with the rats in the swamp."

On January 6, 2021, Sulenta attended the rally at the U.S. Capitol and Entered the U.S. Capitol Building as well after it had been breached by rioters. Sulenta entered the Capitol through the Senate Wing door along with many other rioters at approximately 2:26 p.m. that day.



Figure 1

He then headed towards the Crypt but stopped and entered one of the Senate conference rooms to take photos of rioters outside. That room is typically closed to the public even on days, unlike January 6, when the Capitol is not locked down.



3

Figure 2

Sulenta proceeded to the Crypt, where he talked on his phone and took photographs.



Figure 3

Sulenta eventually exited the U.S. Capitol at approximately 3:13 pm with others through the Senate Wing doors.  In total, Sulenta was inside the U.S. Capitol building for approximately 47 minutes.



Figure 4

*Social Media Posts*

Sulenta's Facebook Account confirmed his involvement in the activities on January 6, 2021. He also posted images to his public social media account after he left the U.S. Capitol building stating, "Inside the capital building. This is wild!" Sulenta's posts were available to anyone who could access Facebook and were limited to his Facebook friends.



Figure 5

It contained posts celebrating, "Dude we breached the capital (sic) building" and bragging, "we got pushed back then a shitload more people came in and we went further."

*The Charges and Plea Agreement*

On June 6, 2022, the United States charged Sulenta by criminal complaint with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D)&(G). On August 4, 2022, law enforcement officers arrested him at the airport in Los Angeles, California. On October 14, 2022, the United States charged Sulenta by a one-count Information with violating 40 U.S.C. § 5104(e)(2)(G).

On November 8, 2022, pursuant to a plea agreement, Sulenta pleaded guilty to Count One of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G). Because Sulenta has pled guilty to a petty offense, a term of supervised release is not authorized. *See* 18 U.S.C. § 3583(b)(3). By plea agreement, Sulenta agreed to pay $500 in restitution to the Department of the Treasury.

### III. Statutory Penalties

Sulenta now faces a sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, Sulenta faces up to six months of imprisonment and a fine of up to $5,000. Sulenta must also pay restitution under the terms of his or her plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV. Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. Some of those factors include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote

respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6). In this case, as described below, the Section 3553(a) factors weigh in favor of 21 days' incarceration, 3 years of probation, 60 hours of community service, and $500 in restitution.

### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Sulenta's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Sulenta, the absence of violent or destructive acts is not a mitigating factor. Had Sulenta engaged in such conduct, he or she would have faced additional criminal charges.

One of the most important factors in Sulenta's case the amount of time – 47 minutes, he spent inside the U.S. Capitol building with other rioters, including entering a room in the Capitol that is typically closed to the public. Furthermore, he announced on social media about his criminal acts, including bragging about pushing back police to go further inside the building.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of 21 days' incarceration, 3 years of probation, and 60 hours of community service in this matter.

### B. The History and Characteristics of Sulenta

As set forth in the PSR, Sulenta's criminal history consists of a misdemeanor conviction for driving under the influence. ECF 22 ¶¶ 25-29. PSR ¶¶ 20-25. Sulenta has been compliant with his conditions of pre-trial release.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President.

The gravity of these offenses demands deterrence. *See United States v. Mariposa Castro*, 1:21-cr-00299 (RBW), Tr. 2/23/2022 at 41-42 ("But the concern I have is what message did you send to others? Because unfortunately there are a lot of people out here who have the same mindset that existed on January 6th that caused those events to occur. And if people start to get the impression that you can do what happened on January 6th, you can associate yourself with that behavior and that there's no real consequence, then people will say why not do it again."). This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The Government's recommended sentence should also discourage Sulenta from engaging in such activity in the future. Furthermore, given Sulenta's statements on social media after January 6, 2021, the Government seeks a sentence that would demonstrate that his actions were criminal and not worthy of praise or braggadocio.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as

9

in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[2] This Court must sentence Sulenta based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Sulenta has pleaded guilty to Count One of the Information, charging him with violation of 40 U.S.C. § 5104. This offense is a Class B misdemeanor. 18 U.S.C. § 3559.  The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A.  § 3553(6), do apply, however.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Section 3553(a)(6) does not limit the sentencing court's broad discretion under 18 U.S.C. § 3553(a) "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). Although unwarranted disparities may "result when the court relies on things like alienage, race, and sex to differentiate sentence terms," a sentencing disparity between defendants whose differences arise from "legitimate considerations" such as a "difference[] in types of charges" is not unwarranted.  *United States v. Bridgewater*, 950 F.3d 928, 936 (7th Cir. 2020).

"Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case." *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006). "[A] defendant cannot rely upon § 3553(a)(6) to seek a reduced

---

[2] Attached to this supplemental sentencing memorandum is a table providing additional information about the sentences imposed on other Capitol breach defendants.  That table also shows that the requested sentence here would not result in unwarranted sentencing disparities.

sentence designed to lessen disparity between co-defendants' sentences." Consequently, Section 3553(a)(6) neither prohibits nor requires a sentencing court "to consider sentencing disparity among codefendants." *Id.* Plainly, if Section 3553(a)(6) is not intended to establish sentencing uniformity among codefendants, it cannot require uniformity among all Capitol siege defendants charged with petty offenses, as they share fewer similarities in their offense conduct than codefendants do. *See United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Tr. at 48-49 ("With regard to the need to avoid sentence disparity, I find that this is a factor, although I have found in the past and I find here that the crimes that occurred on January 6 are so unusual and unprecedented that it is very difficult to find a proper basis for disparity.") (statement of Judge Chutkan)

Cases involving convictions only for Class B misdemeanors (petty offenses) are not subject to the Sentencing Guidelines, so the Section 3553(a) factors take on greater prominence in those cases. Sentencing judges and parties have tended to rely on other Capitol siege petty offense cases as the closest "comparators" when assessing unwarranted disparity. But nothing in Section 3553(a)(6) requires a court to mechanically conform a sentence to those imposed in previous cases, even those involving similar criminal conduct and defendant's records. After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the

11

Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095. It follows that a sentencing court in a Capitol siege petty offense case is not constrained by sentences previously imposed in other such cases. *See United States v. Stotts*, D.D.C. 21-cr-272 (TJK), Nov. 9, 2021 Sent. Hrg. Tr. at 33-34 ("I certainly have studied closely, to say the least, the sentencings that have been handed out by my colleagues. And as your attorney has pointed out, you know, maybe, perhaps not surprisingly, judges have taken different approaches to folks that are roughly in your shoes.") (statement of Judge Kelly).

Additionally, logic dictates that whether a sentence creates a disparity that is unwarranted is largely a function of the degree of the disparity. Differences in sentences measured in a few months are less likely to cause an unwarranted disparity than differences measured in years. For that reason, a permissible sentence imposed for a petty offense is unlikely to cause an unwarranted disparity given the narrow range of permissible sentences. The statutory range of for a petty offense is zero to six months. Given that narrow range, a sentence of six months, at the top of the statutory range, will not create an unwarranted disparity with a sentence of probation only, at the bottom. *See United States v. Servisto*, D.D.C. 21-cr-320 (ABJ), Dec. 15, 2021 Sent. Hrg. Tr. at 23-24 ("The government is trying to ensure that the sentences reflect where the defendant falls on the spectrum of individuals arrested in connection with this offense. And that's largely been accomplished already by offering a misdemeanor plea, which reduces your exposure substantially.") (statement of Judge Berman Jackson); *United States v. Dresch*, D.D.C. 21-cr-71 (ABJ), Aug. 4, 2021 Sent. Hrg. Tr. at 34 ("Ensuring that the sentence fairly reflects where this individual defendant falls on the spectrum of individuals arrested in connection with the offense has largely been accomplished by the offer of the misdemeanor plea because it reduces his

exposure substantially and appropriately.") (statement of Judge Berman Jackson); *United States v. Peterson*, D.D.C. 21-cr-309, Sent. Hrg. Tr. at 26 (statement of Judge Berman Jackson) (similar).

While no case or defendant is exactly alike, the Government's recommendation is consistent with sentences handed down in other January 6 cases with similar facts. In particular, the Government has often recommended, and judges have often imposed, periods of incarceration in which defendants have spent long periods of time in the Capitol building as well as celebrated their actions and the violence involved on social media.

In *United States v. Devin Rossman*, 22-cr-280 (BAH), the defendant entered the Capitol building and remained there for almost two hours, accessed sensitive locations like the Speaker's Office and even tried to pry open doors while the staff was sheltering under their desks, and bragged on Facebook about his actions.  Chief Judge Howell sentenced Rossman to 32 days' intermittent conferment in addition to probation and community service.

In *United States v. Michael McCormick*, 21-cr-710 (TSC), the defendant entered the Capitol building for about 15 minutes, was vocal in his protests during it, and deleted some data from his mobile telephone afterwards.  This Court imposed a sentence of 14 days of incarceration, no period of probation of supervise release, and restitution in the amount of $500.  Sulenta may not have been as vocal during his presence inside or outside the U.S. Capitol and did not appear to have deleted evidence of his activities. However, by comparison to McCormick, Sulenta spent much more time inside the Capitol, entered a room in the Capitol that is normally closed to the public, and used social media to proudly announce his actions and the actions of others.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d

220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

In crafting its recommendation, the Government took into consideration not only Sulenta's crimes and rhetoric on social media but also his limited criminal history and relatively quick resolution of this matter.[3]

---

[3] Numerous judges of this Court, including Your Honor, *see United States v. Ferreira*, 21-cr-210 (TSC), have concluded that a sentencing court in a case involving a violation of a Class B misdemeanor under 40 U.S.C. § 5104 may impose a "split sentence" – a period of incarceration followed by a period of probation – for defendants convicted of federal petty offenses. See, e.g., 18 U.S.C. § 3561(a)(3); *see, e.g., United States v. Little*, 21-cr-315 (RCL), 2022 WL 768685, at *1 (D.D.C. Mar. 14, 2022) (concluding that " a split sentence is permissible under law and warranted by the circumstances of this case); *see generally Appellee's Brief for the United States, United States v. Little*, No. 22-3018 (D.C.) (filed Aug. 29, 2022). Approximately nine judges of this district have authorized and imposed such split sentences pursuant to law. *But see United States v. Panayiotou*, No. 22-CR-55 (DLF), 2023 WL 417953 (D.D.C. Jan. 25, 2023) (holding that such sentences are impermissible under Section 3561(a)(3)).

In the alternative, courts have also issued sentences under 18 U.S.C. § 3563(b)(1), which authorize limited periods of intermittent confinement as a condition of probation. The courts have consistently found that such a sentence is permissible for up to two weeks' imprisonment served in one continuous term. *See, e.g., United States v. Mize*, No. 97-40059, 1998 WL 160862, at *2 (D. Kan. Mar. 18, 1998) (quoting Section 3563(b)(10)'s legislative history in interpreting the term to mean a "brief period of confinement, e.g., for a week or two, during a work or school vacation," described above and reversing magistrate's sentence that included 30-day period of confinement as a period condition of probation). To this end, at least four of the judges of this Court have imposed sentences under §3563(b)(10). Indeed, a sentencing court may also impose multiple intervals of imprisonment under §3563(b)(1). *See United States v. Anderson*, 787 F. Supp. 537, 539 (D. Md. 1992). ; *Panayiotou*, 2023 WL 417953, at *9 ("in a case in which the

14

V.       **Conclusion**

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to 21 days' incarceration, 3 years of probation, 60 hours of community service, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

                                                Respectfully submitted,

                                                MATTHEW M. GRAVES
                                                United States Attorney
                                                D.C. Bar No. 481052

By:    s/ *Joseph Huynh*
         Assistant United States Attorney
         D.C. Bar No. 495403
         Assistant United States Attorney (Detailed)
         405 East 8th Avenue, Suite 2400
         Eugene, Oregon 97401-2708
         Telephone: (541) 465-6771
         Joseph.Huynh@usdoj.gov

---

government exercises its prosecutorial discretion to allow a defendant to enter a plea to a single petty misdemeanor, it can request that a court impose a sentence of intermittent confinement as a condition of probation.") (citing 18 U.S.C. § 3563(b)).

       In this district, at least two judges have similarly imposed multiple terms of imprisonment, to be served intermittently, consistent with this subsection. Such sentences are particularly appealing in light of the fact that it has been nearly three years since the World Health Organization first declared the COVID-19 outbreak a global pandemic in March 2020, and over two years since the first COVID-19 vaccine was administered in the United States in December 2020, allowing detention facilities to now more safely handle the logistical and practical concerns associated with multiple stints of imprisonment.

## CERTIFICATE OF SERVICE

On this 8 day of February 2023, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

    /s/ *Joseph Huynh*
Assistant United States Attorney
D.C. Bar No. 495403
Assistant United States Attorney (Detailed)
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401-2708
Telephone: (541) 465-6771
Joseph.Huynh@usdoj.gov