**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | :   **Case No. 1:22-CR-340-TSC** |
| **Plaintiff,** | : |
| | : |
| **v.** | : |
| | : |
| **DEREK SULENTA,** | : |
| | : |
| **Defendant.** | |

**DEFENDANT'S SENTENCING MEMORANDUM; EXHIBITS**

Defendant Derek Sulenta, by and through his counsel of record, Deputy Federal Public Defender Kelley Munoz, hereby files his sentencing memorandum for the Court's consideration before the February 22, 2022, sentencing hearing.  Mr. Sulenta will be sentenced following his plea of guilty to one count of Parading, Demonstration, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G), a class B misdemeanor.  Mr. Sulenta respectfully suggests that a reasonable sentence would be a term of three years probation, as recommended by the United States Probation Office, based on his personal history, including his employment and status as caregiver for his cancer-stricken mother.

I.     **A Sentence of Probation is Reasonable in Light of All Factors Listed at 18 U.S.C.**
       **§ 3553(a)**

Although the United States Sentencing Guidelines do not apply to this offense or guide the Court's sentencing discretion, the factors listed at 18 U.S.C. § 3553(a) do, such as the nature and circumstances of the offense, the history and characteristics of Mr. Sulenta, the need for the

1

sentence to reflect the seriousness of the offense, provide just punishment and promote respect for law, avoid unwarranted deterrence, and the need to provide restitution.

### a. History and Characteristics of Mr. Sulenta

Mr. Sulenta is a lifelong resident of California. His parents divorced when he was about 3 years old. PSR ¶ 28. His father then moved out of state for 24 years, while his mother remarried. Mr. Sulenta' s stepfather was physically and verbally abusive throughout his childhood. PSR ¶ 29. This led to multiple divorce filings and restraining order proceedings.

While Mr. Sulenta is not married and has no children, he is a hardworking family man who works as a store manager and, as an only child, cares for his aging parents when he is not working. PSR ¶30-31. Mr. Sulenta lives in his mother's home as her primary caretaker, and despite their divorce over 30 years ago, Mr. Sulenta urged his 75 year old father to move in as well so that he could care for him. PSR ¶ 31. Mr. Sulenta is the only working adult, and assists his parents financially. He drives his father to his doctor's appointments approximately 70 miles away. His mother has in recent times alternated between chemotherapy and hospice for her breast and skin cancers. Mr. Sulenta attend to her daily needs in the home and takes her to her various medical appointments. Exhibit A (redacted to remove his mother's first name for her medical privacy).

Mr. Sulenta is a high school graduate with some college. PSR ¶ 39. As his former high school band teacher explains, Mr. Sulenta was a hard-worker even back as a teen, earning his own funding as a teen to participate in the band and earning the position of Drum Captain. Exhibit B.[1]

---

[1] Letters submitted as exhibits have been redacted to remove personal email addresses from this public filing.

Mr. Sulenta has a steady history working in furniture and mattress sales. PSR ¶ 41. He is currently a sales manager for a mattress store. Mr. Sulenta's former employer describes him as a "responsible individual that took his responsibilities seriously and would go out of his way to keep a promise." Exhibit C. This former employer, now a personal friend, notes Mr. Sulenta's "ability to continue to motivate others with positivity."

Mr. Sulenta's girlfriend explains that he supported her through college, has paid towards her student loans, has helped raise her daughter, and gave her a car in which to drive her daughter to a better school than she would otherwise be able to attend. Exhibit D. She mentions Mr. Sulenta's selfless heart, which is seen in his treatment of her and her daughter as well as his efforts to care for his parents.

Mr. Sulenta's father writes that Mr. Sulenta is extremely kind, and has held his own life up to be available to care for his mother. Exhibit E. Mr. Sulenta's mother writes about how "patient and tender" Mr. Sulenta is, and documents the care he provides her with respect to nutrition, cancer treatments, doctor appointments, personal affairs, oxygen, getting around the house, changing bandages, and more. Exhibit F (redacted to remove mother's first name for her medical privacy).

Mr. Sulenta has led an almost entirely law-abiding life, with the exception of a DUI conviction dating back to 2005 for which he successfully completed probation and served 1 day in jail. PSR ¶ 21. Since that conviction approximately 17 years ago, Mr. Sulenta is now only an occasional drinker of alcohol. PSR ¶ 36 . He has no other substance abuse problems and no other criminal history.

While Mr. Sulenta is culpable, his specific personal circumstances, most importantly his history of employment and position as caregiver for his aging parents, do not warrant a custodial

sentence.  A lengthy period of probation will be sufficient to achieve the goals of sentencing, such term could include home detention allowing him to meet his responsibilities to his employer as well as his caregiving responsibilities to his mother.  The character reference letters at exhibits A-F describe a wholly decent man, a man ensnared in a false depiction of patriotism perpetuated by the self-serving histrionics of a former President, a man who takes responsibility for and regrets his actions in an overwhelming situation.  The instant offense is a true deviation from an otherwise admirable life.

**b.  Offense Conduct**

The public was told an inflammatory lie by a sitting President that the election had been stolen, and democracy was being threatened by an opposing political party.  Mr. Sulenta traveled to Washington D.C. on or about January 5, 2021.  PSR ¶ 5.  As he explained on social media in late December, Mr. Sulenta was led to believe he needed to be in D.C. on January 6th because "That's the day [the President] called for patriots to show up."

At the January 6 rally, the then-President continued to rile up the crowd by repeating  that he had actually won the presidential election.  Describing the circumstances as "the most brazen and outrageous election theft," "a pure theft in American history," and that "[t]here's never been anything like this," the President urged his supporters to march to the nearby Capitol building. *Read: Former President Donald Trump's January 6 Speech, avail at* https://www.cnn.com/2021/02/08/politics/trump-january-6-speech-transcript/index.html. Although the then-President claimed that "everyone here will soon be marching over to the Capitol building to peacefully and patriotically make your voices heard," he also challenged them to action by stating that "you'll never take back our country with weakness," and that "we will see whether Republicans stand strong for integrity of our elections, but whether or not they

stand strong for our country." Although the President often used "we," suggesting that he would next walk with his supporters to the Capitol, he did not.

Mr. Sulenta was an unsophisticated political participant when he traveled to D.C.; he is not a militia member, a member of any extremist group, or habitual disruptor. Mr. Sulenta found himself, and admittedly allowed himself, to become involved in a situation which devolved beyond that ever known in history. Mr. Sulenta did not bring weapons or tactical gear, because he was not planning to become involved in any riot. He was not disguising himself with a mask. When he entered the Capitol, it was "well after" it had already been breached by others. PSR ¶ 14.

Mr. Sulenta followed with the foot traffic passing through the building.[2] He did not take any property. Unlike the government's example where a defendant received a 32 day prison sentence with probation, Mr. Sulenta did not enter the Speaker's Office, and did not try to pry open doors where people were taking shelter. Nor, like the example of a defendant garnering a 14 day prison sentence, was Mr. Sulenta vocal in protest and he did not delete data. Gov. Sent. Memo. at 13. It is submitted that under seal exhibit G is representative of his conduct while inside the Capitol; i.e. Mr. Sulenta was walking calmly and followed the directions of the officers motioning him to their right.

Mr. Sulenta takes responsibility that he did, as charged and admitted in his plea agreement, enter the Capitol when he should not have. He has taken responsibility and shown

---

[2] Mr. Sulenta made social media posts contemporaneous with the moment about the situation being "wild," as it was massively crowded and wildly chaotic. It is a misinterpretation to allege that Mr. Sulenta bragged about "pushing back police to go further inside the building." Gov. Sent. Memo. at 7. The post described that "we got pushed back then a shitload more people came in and we went further." *Id.* at 5. There is no evidence that Mr. Sulenta, individually or in tandem, ever pushed police; rather the crowd he was in at one point was pushed back in an unspecified manner.

his genuine remorse throughout these proceedings, waiving preliminary hearing, promptly

accepting the government's plea offer without dragging the proceedings out or forcing a trial,

and by prepaying the anticipated restitution and special assessment via money orders he

purchased January 10, 2023.  Exhibit H.  Beyond his actions in promptly resolving this case and

prepaying his anticipated restitution and special assessment, Mr. Sulenta's continued acceptance

of responsibility and remorse for allowing himself to become involved is explained in his letter

of allocution.  Exhibit I.

> **c. Just Punishment, Deterrence, Protection of Society, and the Need to Avoid Unwarranted Sentencing Disparities**

Mr. Sulenta was arrested in the Central District of California on or about August 4, 2022.

Dkt. 5.  He waived preliminary hearing while in California.  His initial appearance by video

conference before this Honorable Court was August 18, 2022, during which he waived speedy

trial rights and a future status conference was set for October 20, 2022.

Mr. Sulenta did not oppose the entry of a protective order in this matter.  Dkt. 8 and 11.

On October 14, 2022, an Information was filed as to Mr. Sulenta charging a violation of 40

U.S.C. § 5104(e)(2)(G), a class B misdemeanor, for Parading, Demonstration, or Picketing in a

Capitol Building.  Within just about two months from his arrest, on October 7, 2022, and shortly

upon receiving the government's plea proposal, Mr. Sulenta entered into a plea agreement with

the government agreeing to plead guilty to this charge because he desired to promptly take

responsibility.  Dkt. 16.

Mr. Sulenta has been on his personal recognizance since his arrest, with no violations.

His conduct since his arrest in obeying all bond conditions and promptly taking responsibility to

resolve his case demonstrate his deterrence from future criminal conduct and respect for the law.

The entirety of Mr. Sulenta's life leading up to the offense conduct, and his conduct since the offense, demonstrate that a sentence of probation will suffice to protect the public as there is not likelihood of recidivism.

Regarding the need to avoid unwarranted sentencing disparities, many misdemeanants convicted of violating 40 U.S.C. § 5104(e)(2)(G) received sentences that did not include a custodial component.  Table 1, Gov. Sent. Memo.  In order to avoid unwarranted sentencing disparities, and in light of his personal 3553(a) factors, Mr. Sulenta respectfully suggests that probation is an appropriate sanction.  To the extent the Court finds additional punishment warranted, Mr. Sulenta respectfully suggests the Court consider home detention which would allow him to continue as caregiver for his ailing mother and aging father, and his employment status upon which the family unit relies.

### d.  Restitution and Fine

Mr. Sulenta respectfully submits that the parties' agreed restitution amount of $500 is appropriate.  On January 10, 2023, Mr. Sulenta purchased money orders in the amount of $10 for the special assessment and $500 for restitution stipulated and proposed in the plea agreement. Exhibit H.  Upon receipt, undersigned counsel sent them via Federal Express to the Clerk of Court.

Mr. Sulenta has no objection to the proposed $1000 fine per the Sentencing Recommendation submitted by the United States Probation Office on February 15, 2023.

II.     **As the Instant Offense is a Class B Misdemeanor Petty Offense Court**
        **Supervision is Not Available Should the Court Impose a Custodial Sentence**

   a.  **Supervised Release**

40 U.S.C. § 5104(e)(2)(G) is punishable by up to 6 months in prison, making it a Class B
misdemeanor.  PSR ¶49.   It is also, therefore, a "petty offense."  PSR ¶51; 18 U.S.C. § 19
(defining "petty offense" to be Class B and C misdemeanors and infractions).  Supervised release
is authorized only for felonies or "misdemeanor[s] (other than a petty offense)."  18 U.S.C.
3585(b).  Thus, supervised release is not authorized for convictions under 40 U.S.C.
§ 5104(e)(2)(G).  The PSR concurs that "a term of supervised release is not applicable" to this
petty offense.  PSR ¶ 51.

   b.  **Probation**

Probation is authorized as follows:

   (a) In general.--A defendant who has been found guilty of an offense may be
   sentenced to a term of probation unless--

      (1) the offense is a Class A or Class B felony and the defendant is an
      individual;

      (2) the offense is an offense for which probation has been expressly
      precluded; or

      (3) the defendant is sentenced at the same time to a term of imprisonment
      for the same or a different offense that is not a petty offense.

18 U.S.C. § 3561.  Each of the three numbered subsections of 3561 thus prohibit probation in
certain delineated circumstances.  Mr. Sulenta argues that subsection (a)(3) precludes probation
should he be sentenced to a term of imprisonment because the subsection precludes probation
when a defendant is sentenced to imprisonment "for the same . . . offense."  18 U.S.C.
§ 3561(a)(3).

Mr. Sulenta notes that it is unresolved in this circuit whether the Court has the authority, should it impose a custodial sentence, to also impose a period of probation.  The question is raised by a case currently pending before the United States Court of Appeals for the District of Columbia Circuit.  *See United States v. Little*, Case No. 22-3018 (D.C. Cir. 2022).  Mr. Sulenta believes the 3553(a) factors favor a sentence of probation; however, should the Court disagree and impose a custody sentence, Mr. Sulenta respectfully submits that there is no authority to impose any kind of supervision to follow.

**III.      Conclusion**

For the forgoing reasons, Mr. Sulenta respectfully requests that Court impose the three year probationary sentence without any custodial term, as recommended by the United States Probation Office in its Sentencing Recommendation.

<div style="margin-left: 40%;">

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

</div>

DATED:  February 15, 2023          By  /s/ *Kelley Munoz*
                                   Kelley Munoz
                                   Deputy Federal Public Defender

**PROOF OF SERVICE**

      I, **Veronica Do**, declare that I am a resident or employed in Orange County, California; that my business address is the Office of the Federal Public Defender, 411 West Fourth Street, Suite 7110, Santa Ana, California  92701-4598, Telephone No. (714) 338-4500; that I am over the age of eighteen years; that I am not a party to the action entitled above; that I am employed by the Federal Public Defender for the Central District of California, who is a member of the Bar of the State of California, and at whose direction I served a copy of the attached

**DEFENDANT'S SENTENCING MEMORANDUM; EXHIBITS** on the following

individual(s) by:

| [ ] Placing same in a sealed envelope for collection and interoffice delivery addressed as follows: | [ ] Placing same in an envelope for hand delivery addressed as follows: | [ ] Placing same in a sealed envelope for collection and mailing via the United States Post Office addressed as follows: | [ ] Faxing same via facsimile machine addressed as follows: |
|---|---|---|---|

**<u>VIA E-MAIL</u>**
**Ami Landon, USPO**
**Ami_landon@dcp.uscourts.gov**

      This proof of service is executed at Santa Ana, California, on **February 15, 2023**.

      I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

                                */s/ Veronica Do*           .
                                  **VERONICA DO**